UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR TORRES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL MAY, et al.,<br><br>　　　　Defendants. | Case No. 1:20-cv-00839-EPG (PC)<br><br>SCREENING ORDER<br><br>ORDER ALLOWING CASE TO PROCEED ON PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST DEFENDANTS MAY, SHIMMIN, AND FRAUENHEIM<br><br>(ECF NO. 8) |

Arthur Torres ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on June 17, 2020. (ECF No. 1). On June 22, 2020, the Court screened the complaint, found that Plaintiff failed to state any cognizable claims, and gave Plaintiff leave to amend. (ECF No. 6). Plaintiff filed his First Amended Complaint on July 10, 2020. (ECF No. 8).

Plaintiff's First Amended Complaint is now before this Court for screening. For the reasons described below, the Court finds that Plaintiff's Fourteenth Amendment due process claim against defendants May, Shimmin, and Frauenheim should proceed passed the screening stage. As the Court has found Plaintiff's only claim cognizable, the Court will, in due course, issue an order authorizing service of process on defendants May, Shimmin, and Frauenheim.

\\\

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\
\\\
\\\

**II.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff alleges as follows in his complaint:

To address drug offenses, the California Department of Corrections and Rehabilitation ("CDCR") has promulgated regulations that make a distinction between distribution and possession. Section 3000 of title 15 of the California Code of Regulations defines distribution as "the sale or unlawful dispersing … of any controlled substance…." Section 3016(d) provides that "inmates shall not distribute … any controlled substance."[1]

This plain language requires an inmate to sell or disperse a controlled substance in order to violate Section 3016(d). It is the sale or dispersing that differentiates distribution from possession. Possession without evidence of selling or dispersing is possession.

Distribution allows prison officials to take up to 180 days of credits, one year of visitation, and two years of contact visitation after the initial one year without visitation. Possession only allows prison officials to take up to 150 days of credits, 90 days of visitation, and 90 days of contact visitation after the initial 90 days without visitation.

In his official capacity as Senior Hearing Officer, Lieutenant Daniel May found Plaintiff guilty of violating Section 3016(d) without any evidence that Plaintiff sold or dispersed a controlled substance. During Plaintiff's disciplinary hearing, as documented in the Disciplinary Hearing Results, May did not find that Plaintiff sold or dispersed a controlled substance. May speculated that "if sold," Plaintiff "could have" profited. However, May did not find that Plaintiff intended to sell or disperse a controlled substance. May's use of the words "if" and "could have" are a tacit admission that Plaintiff's conduct did not reach distribution. CDCR documents show that there was no attempt to distribute and no conspiracy to distribute.

May deprived Plaintiff of due process when May found Plaintiff guilty and imposed punishment consistent with a violation of Section 3016(d) without any evidence to support the finding.

---

[1] Plaintiff alleges that, at the time of his offense, the charge of distribution was found at Section 3016(c).

Aaron Shimmin, in his official capacity as Associate Warden and Chief Disciplinary Officer, reviews every guilty finding and disposition. It was Shimmin's duty to ensure that all due process protections were afforded to Plaintiff and that Plaintiff was not found guilty or punished unless there was a preponderance of the evidence in favor of the guilty finding. Shimmin failed in his duty to protect Plaintiff's due process rights by affirming May's guilty finding even though there was no evidence to support that finding.

A review of the Disciplinary Hearing Results shows that, in addition to affirming May's guilty finding, Shimmin found Plaintiff guilty of violating Section 3016(d). Shimmin also imposed punishment consistent with a violation of Section 3016(d), including a loss of 180 days of credits and a one-year loss of visits, followed by a loss of two years of contact visits.

Shimmin deprived Plaintiff of due process by finding that Plaintiff was guilty of violating Section 3016(d), and imposing punishment consistent with a violation of that section, without any evidence to support that conclusion.

Scott Frauenheim, in his official capacity as Warden and Second Level Reviewer, reviewed Plaintiff's inmate appeal and provided CDCR's final decision on the issue.

Plaintiff's inmate appeal informed Frauenheim that there was no evidence of distribution as defined in Section 3000. Frauenheim had a duty to ensure that Plaintiff was afforded due process and to correct any due process violation by reversing the guilty finding and punishment imposed by May and Shimmin if the finding was not supported by a preponderance of the evidence.

However, Frauenheim failed to do so. In his second level response, Frauenheim stated "[b]eing in possession … meets the definition of conspiring to distribute." Given that Plaintiff was not charged or found guilty of conspiracy or conspiring to distribute, and that the CDCR has admitted that there was no attempt or conspiracy, Frauenheim's assertion suggests an alternative theory of guilt that is also not supported by any evidence.

Based on the above, there was no evidence of distribution to support May's conclusion. Shimmin and Frauenheim had the opportunity to correct the due process violation and failed to do so.

Plaintiff asks the Court to vacate the guilty finding and punishment imposed in Rules Violation Report ("RVR") #5093279. Plaintiff also asks the Court to order Frauenheim to remove any references to the charge and guilty finding from Plaintiff's central file. Plaintiff also asks for his credits and visitation to be reinstated. In the alternative, Plaintiff asks the Court to lower the distribution charge to possession.

## III.  EVALUATION OF CLAIM IN PLAINTIFF'S COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite

causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B. Due Process**

    **a. Legal Standards**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that resulted in a punishment of thirty days in solitary confinement, provided the following guidance in determining when there is a deprivation of liberty interests such that procedural due process is required in the prison context:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
>
> …
>
> This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976) (assuming without deciding that freedom from punitive segregation for " 'serious misconduct' " implicates a liberty interest, holding only that the prisoner has no right to counsel) (citation omitted), this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective

> custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.
>
> Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353–68, 353–69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23–700–33(b) (effective Aug. 1992). The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–700–36 (1983). The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause. The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

Sandin v. Conner, 515 U.S. 472, 483-87 (1995) (footnotes omitted). Thus, in Sandin, the Supreme Court held that neither thirty days in solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections. Regarding the issue of parole in particular, the Court found that the fact that charges could be used against the prisoner in his parole hearing was not a significant deprivation of his liberty interests because the charges did not inevitably affect his sentence, parole was based on a myriad of considerations, and the prisoner had a chance to explain the circumstances behind his record.

      To the extent that plaintiffs are entitled to due process under the legal standards discussed above, prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. Wolff, 418 U.S. at 556. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id.

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or ... to have adequate substitute aid ... from the staff or from a[n] ... inmate designated by the staff." Id. at 570.

Additionally, "some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached…." Id. at 455-56.

### b. Application to Plaintiff's complaint

The Court finds that Plaintiff has sufficiently alleged that he was entitled to due process in his disciplinary hearing and that his due process rights were violated because he has alleged there was no evidence to support the decision of the hearing officer, defendant May. Accordingly, Plaintiff has stated a claim against defendant May.

As to defendants Shimmin and Frauenheim, the connection between their actions and the alleged violation is somewhat tenuous. However, given that Plaintiff has alleged that they were involved in the violation, that Plaintiff is only seeking injunctive relief, and that these defendants may be able to provide the injunctive relief requested, the Court will allow

Plaintiff's claim to proceed against these defendants as well.[2]

## IV.  CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and finds that it states a cognizable Fourteenth Amendment due process claim against defendants May, Shimmin, and Frauenheim.

As the Court has found that Plaintiff's only claim is cognizable, IT IS ORDERED that this case proceed on Plaintiff's Fourteenth Amendment due process claim against defendants May, Shimmin, and Frauenheim.

The Court will, in due course, issue an order authorizing service of process on defendants May, Shimmin, and Frauenheim.

IT IS SO ORDERED.

Dated:   **July 15, 2020**                              /s/ Erica P. Grosjean
                                                                   UNITED STATES MAGISTRATE JUDGE

---

[2] The Court is not taking a position on whether this action should proceed, if at all, only through a petition for habeas corpus. "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas corpus relief (or appropriate state relief) instead." Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (citations and internal quotation marks omitted). In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. This "favorable termination rule" preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. Muhammad v. Close, 540 U.S. 749, 750-751 (2004). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 81-82. The Court notes that, in the Ninth Circuit, defendants have the burden of proof on this issue. See, e.g., Washington v. Los Angeles Cty. Sheriff's Dep't, 833 F.3d 1048, 1056 n.5 (9th Cir. 2016) (The United States Court of Appeals for the Ninth Circuit has "held that the defendant in a § 1983 action must show that the plaintiff's success in the action would necessarily imply the invalidity of a criminal conviction.").